E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JAMES C. HUGHES (Cal. Bar No. 263878)
Assistant United States Attorney
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2579
Email: James.Hughes2@usdoj.gov

GLENN S. LEON
Chief, Fraud Section
Criminal Division, U.S. Department of Justice
THEODORE M. KNELLER (D.C. Bar No. 978680)
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
1400 New York Avenue, NW
Washington, DC 20530
Telephone: (202) 514-5799
Email: Theodore.Kneller@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KALISTRATOS KABILAFKAS, aka "Kelly Kabilafkas," and JACK EDWARD DANIELS,<br><br>Defendants. | Case No. 2:24-CR-270-MRA-1<br><br><u>GOVERNMENT'S OPPOSITION TO DEFENDANT KALISTRATOS KABILAFKAS'S MOTION TO DISMISS COUNT TWO AND FORFEITURE ALLEGATION ONE OF THE INDICTMENT (Dkt. 81)</u> |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, the Chief of the Fraud Section of the Department of Justice, Assistant United States Attorney James C. Hughes, and Department of Justice Trial Attorney Theodore M. Kneller, hereby

files its Opposition to defendant KALISTRATOS KABILAFKAS's ("defendant Kabilafkas") Motion to Dismiss Count Two and Forfeiture Allegation One of the Indictment ("Motion to Dismiss"). (Dkt. 81).

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 14, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

GLENN S. LEON
Chief, Fraud Section
U.S. Department of Justice

*/s/*
THEODORE M. KNELLER
JAMES C. HUGHES

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I. INTRODUCTION........................................................1

II. STATEMENT OF FACTS..................................................1

III. PROCEDURAL HISTORY.................................................4

A. The Indictment.......................................................4

B. Defendant Kabilafkas's Motion to Dismiss.............................4

IV. ARGUMENT............................................................5

A. Legal Standard: Sufficiency of an Indictment.........................5

B. Count Two of the Indictment Sufficiently Alleges All of the Elements of a Securities Fraud Violation............7

C. Defendant Kabilafkas's Motion to Dismiss Count Two Should be Denied..............................................9

1. The Court Should Reject Defendant's Argument that Count Two is Time-Barred Except for the April 2018 Sale............................................10

2. Defendant Kabilafkas Incorrectly Asserts that the Indictment Does Not Identify any Misstatement or Omission in Connection with the April 2018 Sale.....13

3. Defendant Erroneously Relies on Inapplicable Authority Analyzing the Language of Statutes that are Not Charged in the Indictment...................16

a. Title 15 Securities Fraud Does Not Require a Scheme to Deprive a Victim of Money or Property.......................................17

b. Even if Ciminelli Applies to Count Two, the Indictment Alleges Fraud Targeting at Traditional Property Interests of Victim Investors......................................20

D. Criminal Forfeiture is a Mandatory Component of a Criminal Sentence, and Criminal Forfeiture is Not Constrained by Statutes of Limitation.....................22

V. CONCLUSION..........................................................25

# Table of Authorities

**CASES**


Brthd. of R.R. Trainmen v. Baltimore & O. R. Co., 331 U.S. 519 (1947) ........ 23

Carroll v. United States, 326 F.2d 72 (9th Cir. 1963) ........ 11

Ciminelli v. United States, 598 U.S. 306 (2023) ........ 18, 19, 20

Cleveland v. United States, 531 U.S. 12 (2000) ........ 18

Costello v. United States, 350 U.S. 359 (1956) ........ 7

Gabelli v. SEC, 568 U.S. 442 (2013) ........ 23

Goodwin v. United States, 568 U.S. 852 (2012) ........ 25

Hamling v. United States, 418 U.S. 87, 117 (1974) ........ 6

Kelly v. United States, 590 U.S. 391 (2020) ........ 18

Kokesh v. SEC, 581 U.S. 455 (2017) ........ 23, 24

Libretti v. United States, 516 U.S. 29 (1995) ........ 23, 24

Shaw v. United States, 580 U.S. 63 (2016) ........ 18

United States v. Anderson, 532 F.2d 1218 (9th Cir. 1976) ........ 6

United States v. Ashdown, 509 F.2d 793, 797–98 (5th Cir. 1975) ........ 13

United States v. Bell, 112 F.4th 1318 (11th Cir. 2024) ........ 16

United States v. Blackman, 746 F.3d 137 (4th Cir. 2014) ........ 25

United States v. Blosser, 440 F.2d 697, 699 (10th Cir. 1971) ........ 13

United States v. Brown, 578 F.2d 1280, 1285 (9th Cir. 1978) ........ 11

United States v. Christensen, 828 F.3d 763 (9th Cir. 2015) ........ 23

United States v. Constantinescu, 2024 WL 1221579 (S.D. Tex. Mar. 20, 2024) ........ 18, 19

United States v. Ferrario-Pozzi, 368 F.3d 5 (1st Cir. 2004) ........ 24

United States v. Gentile, 235 F. Supp. 3d 649 (D.N.J. 2017) ........ 12

United States v. Givens, 767 F.2d 574 (9th Cir. 1985) ........ 6

United States v. Harris, 2018 WL 6184878 (D. Haw. Nov. 27, 2018) ........ 23

United States v. Ingarfield, 2022 WL 16700068 (S.D.N.Y. Nov. 3, 2022) ........ 11

United States v. Jensen, 93 F.3d 667 (9th Cir. 1996)....................7

United States v. Jesenik, 2023 WL 3455638 (D. Or. May 15, 2023)....19

United States v. Loftis, 843 F.3d 1173, 1176 (9th Cir. 2016).......13

United States v. Maceo, 873 F.2d 1 (1st Cir. 1989)....................7

United States v. Martin, 662 F.3d 301, (4th Cir. 2011)..............24

United States v. Milheiser, 98 F.4th 935 (9th Cir. 2024).......13, 14

United States v. Milton, 2023 WL 5609098 (S.D.N.Y. Aug. 30, 2023)......................................................19

United States v. Ng Chong Hwa, 2023 WL 4194002 (E.D.N.Y. Mar. 24, 2023)..................................................25

United States v. Nordlicht, 2023 WL 4490615 (E.D.N.Y. July 12, 2023)......................................................17

United States v. Percoco, 13 F.4th 158 (2d Cir. 2021)...............20

United States v. Porat, 76 F.4th 213 (3d Cir. 2023).................19

United States v. Reed, 908 F.3d 102 (5th Cir. 2018)............23, 24

United States v. Resendiz-Ponce, 549 U.S. 102 (2007)..................6

United States v. Rivlin, 2007 WL 4276712 (S.D.N.Y. Dec. 5, 2007)...12

United States v. Schessel, 2:22-cr-00374-ES, at 3 (D.N.J. Apr. 23, 2024)..................................................21

United States v. Smith, 740 F.2d 734 (9th Cir. 1984)................12

United States v. Tuchinsky, 703 F. Supp. 3d 1337 (D. Utah 2023)....20

United States v. Tuzman, 2024 WL 1173044 (2d Cir. Mar. 19, 2024)...19

United States v. Watkins, 42 F.4th 1278 (11th Cir. 2022)...........16

Vernazza v. SEC, 327 F.3d 851 (9th Cir. 2003)......................16

**STATUTES**

15 U.S.C. § 78ff(a)...........................................passim

15 U.S.C. § 78j(b)............................................passim

18 U.S.C. § 1001..................................................12

18 U.S.C. § 1341..............................................17, 18

18 U.S.C. § 1343..............................................17, 18

18 U.S.C. § 1344....................................................17, 18
18 U.S.C. § 1348....................................................17, 18
18 U.S.C. § 1349........................................................18
18 U.S.C. § 2...........................................................11
18 U.S.C. § 3301..................................................5, 8, 22
18 U.S.C. § 371..................................................4, 11, 22
18 U.S.C. § 981.........................................22, 23, 24, 25
18 U.S.C. § 982.........................................................25
28 U.S.C. § 2461........................................22, 23, 24, 25
28 U.S.C. § 2462............................................22, 23, 24
Bell v. Cameron Meadows Land Co., 669 F.2d 1278 (9th Cir. 1982)....16

**OTHER AUTHORITIES**

Model Criminal Jury Instructions § 15.47 (9th Cir., 2022 Ed.).......8

**RULES**

17 C.F.R. § 240.10b-5.......................................passim

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case charges defendant Kabilafkas and co-defendant Jack Daniels with a scheme to defraud investors in Airborne securities through a long-running pump and dump securities fraud scheme from May 2014 through November 2018 that yielded millions in illegal gains for Defendant Kabilafkas and left investors holding millions of shares of worthless of stock. The United States responds to defendant Kabilafkas's Motion to Dismiss Count Two and Forfeiture Allegation One of the Indictment. (Dkt. 81-1.) Defendant Kabilafkas's Motion should be denied because Count Two was properly brought within the applicable statute of limitations and is properly alleged as a scheme to defraud, and criminal forfeiture is not constrained by statutes of limitation. Thus, the Court should deny the Motion.

## II. STATEMENT OF FACTS

From May 2014 through November 2018, defendant Kabilafkas orchestrated a long-running securities fraud pump-and-dump scheme that yielded millions in illegal gains for Kabilafkas and left investors holding millions of shares of worthless of stock. (Dkt. 1 at ¶1.) To execute his scheme, Kabilafkas (1) concealed his acquisition of all the free trading shares of Airborne Wireless Network ("Airborne"), a publicly-traded penny stock shell company (Id. at ¶17.y); (2) used investor funds to launch a multi-million-dollar stock promotion campaign (Id. at ¶17.pp-rr); (3) caused Airborne's share price to inflate from $0.40 to over $4.00—a more than one thousand percent (1,000%) increase (Id. at ¶17.nn, zz); and (4) sold his secretly acquired Airborne shares at vastly inflated

prices for millions in profit before Airborne's share price crashed to less than $0.01 (Id. at ¶18, Overt Act No. 16).

In furtherance of his scheme, Kabilafkas caused Airborne to make materially false and misleading representations to the investing public regarding the company's history, ownership, and executive team. (Id. at ¶17.w-cc.) Specifically, Kabilafkas caused Airborne to submit numerous false SEC filings in which Airborne claimed, among other things, that the company's nominal president, co-defendant Daniels, had acquired majority ownership of the company, consisting of 84.1 million restricted shares of Airborne stock, for $250,000 of his own personal funds. (Id. at ¶17.z.) The effect of these filings was to create a false public narrative that Daniels was an owner/operator who had made a substantial investment in his own company, and that his holdings consisted of restricted shares that could not be readily sold. None of these representations were true.

In truth, Daniels was a frontman who had been hand selected by Airborne's true owner/operator, defendant Kabilafkas, to serve as the public face of the company while Kabilafkas exercised control of the company in anonymity. (Id. at ¶17.t-v.) Moreover, Kabilafkas's holdings were not in restricted shares of Airborne stock. As part of the scheme to defraud, Kabilafkas had secretly acquired all of the free trading shares that were nominally held by approximately 30 shareholders, who were all purportedly from Thailand. (Id. at ¶17.c, n.) In acquiring these shares, defendant Kabilafkas also obtained undated, pre-executed stock transfer agreements that were purportedly signed by the Thai shareholders. (Id. at ¶17.o-s.) The pre-executed stock transfer agreements allowed Kabilafkas to backdate sales agreements and fraudulently transfer his shares to any nominee or co-

conspirator that he chose. (Id.) Defendant Kabilafkas used these pre-executed stock transfer certificates to assign millions of free trading shares to himself and his nominees, and then Kabilafkas sold these shares for millions in profits as the price of Airborne rose in response to the multi-million-dollar stock promotion campaign that Kabilafkas paid for with investors' funds. (Id. at ¶17.hh.)

To the investing public, Airborne appeared to be the company that Kabilafkas describes in support of his motion to dismiss: "a start-up that pioneered the development of [patented] technology ... aimed at creating a digital superhighway in the sky by wirelessly linking airborne commercial aircraft." (Def.'s Memo., Dkt. 81-1 at p. 1.) Based on Airborne's SEC filings, the investing public was falsely led to believe that the company's president, co-defendant Jack Daniels, invested a quarter a million dollars of his own money to acquire a controlling equity interest in restricted, or non-sellable, shares of Airborne. (Dkt. 1 at ¶17.x-z.)

In truth, Kabilafkas concealed that he was the majority owner and controlled the company. (Id. at ¶17.t-v.) Furthermore, Kabilafkas concealed his plan from potential investors to use millions in investor funds to pump the share price through a stock promotion campaign and then to dump as many of Kabilafkas's secretly held shares as possible, which would and did cause the share price to plummet. (Id. at ¶17.pp-eee.) Kabilafkas's control and plans to dump his shares were material to any potential investor, this information was not disclosed at any time through the scheme, and each sale during the "dump" of millions of free trading shares of Airborne stock that Kabilafkas secretly acquired was in furtherance of the fraudulent scheme, including the April 2018 Sale.

## III. PROCEDURAL HISTORY

### A. The Indictment

On April 25, 2024, a federal grand jury returned an indictment charging defendant Kabilafkas and co-defendant Jack Daniels each with one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 (Count One) and one count of securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff(a), and 17 C.F.R. § 240.10b-5 (Count Two). The securities transaction underlying Count Two involved Kabilafkas's sale of 21,100 shares of Airborne stock on April 27, 2018 from a brokerage account held in the name of an unindicted co-conspirator (the "April 2018 Sale"). The April 2018 Sale is specifically identified in the Indictment in paragraph 18, Overt Act 13 of Count One and in paragraph 23 of Count Two.

In addition, the Indictment provides notice that the United States will seek forfeiture as "part of any sentence" for conviction under Count One or Count Two of property constituting, or derived from, any proceeds traceable to the offenses. The Forfeiture Allegation specifically lists six residential real estate properties as constituting, or derived from, proceeds traceable to Counts One and Two.

On May 3, 2024, the United States filed a Bill of Particulars for Forfeiture of Property that provided notice for two additional residential real estate properties. (Dkt. 28.)

### B. Defendant Kabilafkas's Motion to Dismiss

Defendant moves to dismiss Count Two and the attendant forfeiture allegation. Defendant argues that: (1) the allegations in Count Two that pre-date the April 2018 Sale are time-barred, and (2) the government has failed to allege a scheme to defraud specifically

in connection with April 2018 Sale. Both arguments are flatly wrong and unsupported by law.

As explained below, and as acknowledged by defendant in his motion, the April 2018 Sale, which forms the basis of Count Two, occurred within six years of the filing of the Indictment. See 18 U.S.C. § 3301 (statute of limitations for securities fraud offenses is six years); see also Def's Memo. Dkt 81-1 at pp. 2-3 (the "sale of securities alleged in the Indictment and falling with in the statute of limitations is a sale of approximately $21,000 worth of Airborne stock...on April 27, 2018...").

Moreover, the Indictment alleges a scheme to defraud employed by defendant in connection the April 2018 Sale: a series of false and materially misleading public filings which concealed the fact that Airborne's purchaser, primary decision maker, and majority shareholder was actively engaged in a scheme to unload his shares. Accordingly, defendant Kabilafkas's arguments are wholly without merit and should be rejected by the Court.

Similarly, as explained below, the Indictment provides notice of a criminal Forfeiture Allegation to be imposed as part of the sentence for a conviction under Count One or Count Two. Defendant Kabilafkas incorrectly asserts that the general civil statute of limitations applies, but it does not. Criminal forfeiture is a mandatory component of a criminal sentence, and criminal forfeiture is not constrained by statutes of limitations.

## IV. ARGUMENT

### A. Legal Standard: Sufficiency of an Indictment

Defendant Kabilafkas's attempts to invoke heightened civil pleading requirements, litigate factual issues in the motion to

dismiss, and impose additional elements not required by statute or case law should be rejected.

Federal Rule of Criminal Procedure 7(c) simply requires that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The Supreme Court has similarly set forth the requirements for a criminal indictment:

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.

Hamling v. United States, 418 U.S. 87, 117 (1974) (citations and internal quotation marks omitted); accord United States v. Resendiz-Ponce, 549 U.S. 102 (2007) (same); United States v. Woodruff, 50 F.3d 673, 676 (9th Cir. 1995) ("Generally, an indictment is sufficient if it sets forth the elements of the charged offense so as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the offense charged."). The indictment is to be read in its entirety and with necessary inferences. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1985); United States v. Anderson, 532 F.2d 1218, 1222 (9th Cir. 1976). The law is also clear that "[a]n

indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956).

Indeed, there is no equivalent in criminal law to summary judgment. "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence." United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996) (internal quotation marks omitted). "A court should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is a preliminary phase of the criminal justice process and all constitutional protections will be afforded at trial." United States v. Maceo, 873 F.2d 1, 2-3 (1st Cir. 1989).

The indictment here satisfies these minimum requirements. Each count properly alleges the elements of the charged offense, and the indictment sets forth the essential facts constituting each of the offenses charged. Defendant's motion to dismiss should be denied.

**B. Count Two of the Indictment Sufficiently Alleges All of the Elements of a Securities Fraud Violation**

The elements of a securities fraud violation under 15 U.S.C. §§ 78j(b), 78ff(a), and 17 C.F.R. § 240.10b-5 (Count Two) are:

First, the defendant willfully used a device or scheme to defraud someone;

Second, the defendant's acts were undertaken, statements were made, or failure to disclose was done in connection with the purchase or sale of a security;

Third, the defendant directly or indirectly used the means and instrumentalities of interstate commerce, and of the mails,

in connection with such acts, making such statements, or such failure to disclose; and

Fourth, the defendant acted knowingly.

See Model Criminal Jury Instructions § 15.47 (9th Cir., 2022 Ed.).

Paragraph 20 of the Indictment alleges each of these elements of a securities fraud offense under Count Two. Paragraph 22 of the Indictment alleges the manner and means of the scheme to defraud under Count Two by realleging Paragraph 17. Paragraph 17 is a 15-page speaking Indictment detailing the manner and means of the scheme to defraud and is divided into 11 subparts and 57 subparagraphs.

Paragraph 23 of the Indictment alleges an act to execute the charged scheme to defraud on April 27, 2018, which was within the applicable statute of limitations. See 18 U.S.C. § 3301. Specifically, Paragraph 23 alleges that Kabilafkas and Daniels sold and caused to be sold 21,100 shares of Airborne stock (i.e., the April 2018 Sale) "for the purpose of executing the above-described scheme to defraud, and in furtherance of the manipulative and deceptive devices ...." More specifically, the April 2018 Sale was part of the "dump" in the pump-and-dump securities fraud scheme.

To be valid, the indictment must allege every element of the securities fraud offense -- no more and no less. See Woodruff, 50 F.3d at 679 (so long as indictment sets forth elements of offense it need not plead "evidentiary detail").

Count Two of the indictment properly alleges all elements of securities fraud under 15 U.S.C. §§ 78j(b), 78ff(a), and 17 C.F.R. § 240.10b-5. In fact, Count Two of the Indictment goes far beyond the minimum level of specificity that is required to be a sufficiently alleged count in an indictment.

### C. **Defendant Kabilafkas's Motion to Dismiss Count Two Should be Denied**

As described in Section III.B. above, Count Two of the Indictment (1) alleges all the elements of a securities fraud scheme; (2) sets out a plain, concise, and definite written statement of the essential facts constituting the offense charged, including the manner and means of the scheme to defraud; and (3) alleges an act, the April 2018 Sale, that is within the statute of limitations and is an execution of the alleged scheme to defraud. The Court's analysis could end there and conclude that Count Two is sufficiently pled and deny defendant's motion to dismiss.

Defendant Kabilafkas, however, confuses the legal requirements and, without legal support, asks the Court to bifurcate its analysis. First, defendant Kabilafkas would have the Court view as standalone counts the Indictment's description of the manner and means for carrying out the fraudulent scheme. (Dkt. 1 at ¶¶ 17 & 20). Defendant argues that conduct described in the manner and means paragraphs should be dismissed because the conduct occurred outside the statute of limitations. See Def.'s Memo., Dkt. 81-1 at pp. 9-15. This is incorrect, as explained in Subsection C.1. below.

Second, defendant Kabilafkas would have the Court view the April 2018 Sale in a vacuum, without the context of defendant's alleged conduct, knowledge, and intent that are described in the manner and means paragraphs of the Indictment. Defendant concedes that the April 2018 Sale is timely under the statute of limitations. Id. at pp. 2-3. Defendant contends, however, that the April 2018 Sale (viewed in isolation) does not constitute a securities fraud violation. Id. at 15. Defendant erroneously puts forward two

inapplicable legal theories to contend that the April 2018 Sale, when viewed in isolation, does not establish a securities fraud violation. These arguments are also incorrect, as explained in Subsections C.2. and C.3. below.

1. <u>The Court Should Reject Defendant's Argument that Count Two is Time-Barred Except for the April 2018 Sale</u>

Defendant Kabilafkas argues that the allegations describing the scheme to defraud in Count Two of the Indictment "risk[] resurrecting time-barred securities violations in the guise of a conspiracy case." Def.'s Memo., Dkt. 81-1 at pp. 14. Furthermore, defendant argues that realleging these allegations in Count Two "compromise[s] [defendant's] right to a fair trial and incentivizes prosecutors to evade statutes of limitations by adding a conspiracy charge to effectively resurrect untimely charges." Id. at pp. 14-15. Thus, Defendant Kabilafkas asks the Court to dismiss certain allegations in Count Two, recognizing that he has no legal basis to seek the dismissal of Count Two as a whole.

Defendant Kabilafkas misapplies the law. Contrary to his assertions, there is no legal basis for dismissal of allegations of a fraudulent scheme that spans a period that starts prior to the limitations period. There is nothing wrong with an indictment providing context for a fraudulent scheme outside the limitations period as long as the charged execution is within the limitations period.

It is common and legally appropriate for an Indictment to allege a fraudulent scheme spanning a period in which the scheme begins outside of the statute of limitations and the scheme is executed

within the statute of limitations. For example, in United States v. Ingarfield, 2022 WL 16700068, at *1 (S.D.N.Y. Nov. 3, 2022), the indictment "charged [the defendant] with one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5; and 18 U.S.C. § 2." Just as in this case, the alleged scheme in Ingarfield began before the limitations period and ended within it. Id. at *2-3. The Ingarfield court denied the defendant's motion to dismiss both counts as time-barred because the indictment adequately alleged that part of the scheme occurred within the statute of limitations. Id. So to here. The fraudulent sale of shares in April 2018 was an integral part of the pump and dump scheme alleged in the Indictment.

Defendant Kabilafkas relies on Carroll v. United States, 326 F.2d 72, 85–86 (9th Cir. 1963), for the proposition that "a securities violation is complete upon the sale of securities at issue." Def's Memo, Dkt. 81-1 at p. 12. But in Carroll, unlike in this case, the specific securities fraud counts were time-barred because the sales of the securities for those counts were completed prior to the limitations period. Here, Count Two is a sale of Airborne securities that is part of the scheme to defraud alleged in the Indictment, and it was executed within the statute of limitations period.[1]

[1] In relying on Carroll, Defendant Kabilafkas ignores a later Ninth Circuit case clarifying Carroll: United States v. Brown, 578 F.2d 1280, 1285 (9th Cir. 1978). In Brown, the Ninth Circuit clarified that a securities sale can include other activities that are "integral to the transaction" that is fraudulent. Id. The court found that this could include "activities tending to lull investors, either to prevent discovery of fraud or to permit further fraudulent activities to progress unhindered." Id.

The other cases defendant Kabilafkas cites are distinguishable and do not support his argument. In United States v. Smith, 740 F.2d 734, 736 (9th Cir. 1984), contrary to the present case, none of the charged false statement counts (18 U.S.C. § 1001) were made within the limitations period. In United States v. Gentile, 235 F. Supp. 3d 649, 653 (D.N.J. 2017), also unlike in the present case, the court found that the defendant's agreements to toll the statute of limitations were not entered knowingly and intelligently and were thus invalid; therefore, the indictment that relied on the tolled limitations period were time-barred.

Finally, United States v. Rivlin, 2007 WL 4276712 (S.D.N.Y. Dec. 5, 2007), reviewed a motion to dismiss a one-paragraph indictment alleging ongoing embezzlement over an eight-year period that began before and ended within the limitations period. The Rivlin court simply held that the government could "only prosecute the defendant for charged conduct that occurred within" the statute of limitations but provided no other guidance concerning the one paragraph indictment.

By acknowledging that Count Two was brought within the statute of limitations but seeking to dismiss it anyway based on the allegations of the fraudulent scheme, defendant Kabilafkas asks this Court for relief that is not available at the motion to dismiss phase. Defendant Kabilafkas essentially seeks to exclude evidence of the scheme, prior false statements, and prior material omissions that relate to the April 2018 Sale of Airborne securities. Such a motion

would be properly made as a motion in limine to exclude evidence at trial.[2] But such relief is not available on a motion to dismiss.

2. Defendant Kabilafkas Incorrectly Asserts that the Indictment Does Not Identify any Misstatement or Omission in Connection with the April 2018 Sale

Defendant Kabilafkas also argues that the recent decision in United States v. Milheiser, 98 F.4th 935 (9th Cir. 2024) forecloses prosecution of the April 2018 Sale because any misrepresentation must go "to the nature of the bargain." But defendant ignores important allegations in the Indictment that demonstrate that the misrepresentations in this case went directly to the "nature of the bargain." Defendant's argument requires this Court to overlook all of the allegations in Count Two that describe the manner and means of

---

[2] The defendant's arguments will also fail once properly briefed at the motion in limine stage. See United States v. Loftis, 843 F.3d 1173, 1176 (9th Cir. 2016) (holding that uncharged transactions are admissible as part of "the fraudulent scheme as a whole" because "Rule 404(b) applies solely to evidence of 'other' acts, not to evidence of the very acts charged as crimes in the indictment."). The Fifth and Tenth Circuits both rejected similar motions that track the reasoning in defendant's motion. In United States v. Ashdown, 509 F.2d 793, 797-98 (5th Cir. 1975), defendants argued the charged scheme included several incidents which occurred prior to the limitations period and the trial jury should not be allowed to consider those acts occurring prior to the statute of limitations period. Id. The Fifth Circuit rejected the defendants' argument:

> The statute of limitations is a defense to prosecution, not a rule of evidence. Therefore, once prosecution is timely instituted, the statute of limitations has no bearing on the admissibility of evidence. It would be a bizarre result indeed if a crime properly prosecuted within the limitations period could not be proven because an essential element, such as intent, could only be established by proof of incidents occurring outside the period.

Id. at 798; see also, United States v. Blosser, 440 F.2d 697, 699 (10th Cir. 1971) (evidence of events that occurred outside the statute of limitations that bore on (i) the existence of a mail fraud scheme, (ii) the falsity of representations made, and (iii) intent, were admissible to prove the offenses that were charged within the statute of limitations).

the scheme to defraud that led to the execution of the April 2018 Sale. But to evaluate the bargain of the April 2018 Sale under Milheiser, the defendant does not get to exclude inconvenient allegations and view the April 2018 Sale in a vacuum.

In Milheiser, 98 F.4th at 938, the Ninth Circuit vacated defendants' mail fraud convictions based on their tactics in selling printer toner: a sales representative would falsely imply that their company was a customer's regular supplier of toner and falsely state that the customer could lock in its toner price by buying more immediately, but "all of the businesses received the toner they ordered at the agreed price." The court explained "that not just any lie that secures a sale constitutes fraud[;] the lie must instead go to the nature of the bargain." Id. at 944.

Under the holding in Milheiser, a misrepresentation "will go to the nature of the bargain if it goes to price or quality, or otherwise to essential aspects of the transaction." Id. But whether a misrepresentation goes to the nature of the bargain depends on the specific transaction at issue. For example, the Milheiser court "rejected the idea that only 'direct misrepresentations of the price, quality, or advantages of the transaction are material.'" Id. at 944-45.

As an initial matter, the government notes that Milheiser was not decided on a motion to dismiss and does not impose a heightened pleading standard under Rule 7. But defendant Kabilafkas is also incorrect that this case should be dismissed under Milheiser because this case is vastly distinct. The customers in Milheiser purchased toner at the same price at which they regularly purchased toner. 98 F.4th 935, 944 (9th Cir. 2024). Given this, the misrepresentations,

such as about the identity of the caller and the fact that the price had changed, did not go to the benefit of the bargain because the customers paid the same price for toner as they otherwise would have. See id. at 938.

Here, the indictment alleges a scheme to defraud Airborne investors about key attributes of Airborne securities, including its ownership; this is not a case where Airborne investors got what they paid for. This is demonstrated by several of the misrepresentations and material omissions alleged in the indictment that go to the nature of the bargain of the securities fraud scheme, as alleged in the Count Two April 2018 Sale. For example, it would have been material to the nature of the bargain for the reasonable investor purchasing Airborne shares via the April 2018 Sale to know that defendant Kabilafkas had intentionally concealed his ownership and control of Airborne so that he could spend millions of investors' funds on a stock promotion advertising campaign that coincided with the share price rising from less $0.40 to $4.00. (See Dkt. 1 at ¶17.nn, zz.) Furthermore, it would have gone to the nature of the bargain for the investor to know that defendant Kabilafkas was aggressively selling off all of his Airborne stock while the stock promotion campaign was ongoing. (See id. at ¶17.ddd-eee.) Finally, it would have gone to the nature of the bargain to know that defendant Kabilafkas and co-defendant Daniels had lied in SEC filings about Daniels' ownership stake in the company as a means to conceal that Kabilafkas was the true control person of Airborne. (See id. at ¶17.w-cc, hh.)

Milheiser itself specifically identified precisely the types of misrepresentation and omissions present here that do go to the nature

of the bargain under the federal securities laws. See, e.g., United States v. Watkins, 42 F.4th 1278, 1282 n.5 (11th Cir. 2022) ("[The defendant] lied about high-profile individuals being involved with [the proposed investment], which affected the nature of the bargain."); Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1282 (9th Cir. 1982) (holding, in applying federal securities laws, that "[a]ny significant relationship between" a director and the company in which he was recommending buying shares "was material to an evaluation of his and the other directors' positive recommendations, which presumably were material to an evaluation of the tender offer itself"); Vernazza v. SEC, 327 F.3d 851, 858-59 (9th Cir. 2003) (holding that partners in an investment firm made materially false statements for the purposes of federal securities law when they falsely claimed not to have conflicts of interest in the securities they were recommending); see also United States v. Bell, 112 F.4th 1318, 1327-29 (11th Cir. 2024) (misrepresentations about the odds an asset will appreciate go to the nature of the bargain).

3. Defendant Erroneously Relies on Inapplicable Authority Analyzing the Language of Statutes that are Not Charged in the Indictment

Defendant Kabilafkas erroneously argues that a securities fraud violation under Title 15 of the United States Code requires that the government prove that the scheme involved depriving a victim of money or property. This is not the law. But even if it were, Count Two properly alleges a scheme to defraud victims of money or property.

a. *Title 15 Securities Fraud Does Not Require a Scheme to Deprive a Victim of Money or Property*

In Section II.B.ii. of defendant's Motion to Dismiss, Kabilafkas cites a series of cases that analyze various fraud statutes under Chapter 63 of Title 18 of the United States Code (see, e.g., 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1344 (bank fraud), and 1348 (securities and commodities fraud)). Def.'s Memo., Dkt. 81-1 at pp. 19-22. Unlike the Title 15 securities fraud statute charged in Count Two, each of these statutes contain similar language that prohibits any scheme or artifice to defraud *to obtain money or property* by means of false or fraudulent pretenses, representations or promises.

Decisions analyzing these Title 18 fraud statutes are not applicable to Count Two of the indictment, which alleges securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5. Title 15 securities fraud does not require an intent to deprive the victim of money or property. See, e.g., United States v. Nordlicht, 2023 WL 4490615, at *5 (E.D.N.Y. July 12, 2023) ("Wire fraud, unlike securities fraud, does require an intent to deprive the victim of money or property."). Under a Title 15 securities fraud count, "intent to harm" is not part of the scienter element of the charges; instead, it is enough that a defendant intends to "deceive" or "manipulate." Id. Indeed, neither the statute (15 U.S.C. § 78j(b)) nor the SEC Rule (Rule 10b-5) contains the "money or property" language that was essential to the holding in the cases that defendant cites.

Defendant exclusively relies on cases analyzing scheme to defraud liability under Title 18, which are not applicable to

Count Two. See Cleveland v. United States, 531 U.S. 12, 19 (2000) (analyzing mail fraud (18 U.S.C. § 1341)); Shaw v. United States, 580 U.S. 63 (2016) (analyzing bank fraud (18 U.S.C. § 1344)); Ciminelli v. United States, 598 U.S. 306 (2023) (holding that the right-to-control theory that a defendant's scheme to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions cannot form the basis for a conviction under the federal wire fraud statute (18 U.S.C. § 1343)); Kelly v. United States, 590 U.S. 391, 393 (2020) (holding that the wire fraud statute prohibits only deceptive schemes to deprive the victim of money or property (18 U.S.C. § 1343)); United States v. Constantinescu, 2024 WL 1221579, at *4 (S.D. Tex. Mar. 20, 2024) (analyzing Ciminelli's holding regarding 18 U.S.C. § 1348's statutory language "to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property" to a Title 18 securities fraud scheme).

Defendant relies in his motion on Constantinescu, 2024 WL 1221579, which is an outlier district court decision. In Constantinescu, the court dismissed an indictment charging conspiracy to commit securities fraud and securities fraud under 18 U.S.C. §§ 1348 and 1349, in part based on an analysis of a right to control fraud theory. The Government believes this case was wrongly decided and notes that the United States filed its Notice of Appeal in this case on April 5, 2024. Id. 2024 WL 1221579, at *2, appeal docketed, No. 24-20143 (5th Cir. Apr. 5, 2024) .

Importantly, the Constantinescu court analyzed 18 U.S.C. § 1348 and not Title 15 securities fraud, and thus is not applicable here. In its decision, the Constantinescu court confused the object of that

scheme——inducing the defendants' followers to part with their money and buy stock——with the means by which it was executed: telling lies about stocks and stock trading. See Constantinescu, 2024 WL 1221579, at *2.

Furthermore, Constantinescu also appears to be the sole outlier in a long and growing line of cases rejecting attempts to broaden Ciminelli's narrow scope to cases involving traditional property interests. See United States v. Tuzman, Nos. 21-2229 (L), 21-2379 (CON), 2024 WL 1173044 (2d Cir. Mar. 19, 2024) (rejecting a Ciminelli argument and affirming wire fraud convictions because there was sufficient evidence in the record to show that the defendants' fraud scheme "involved knowingly inflating revenue and deceiving investors through false statements and information both to keep investors' money . . . and to obtain more money from investors."); United States v. Porat, 76 F.4th 213, 219 (3d Cir. 2023) (rejecting a Ciminelli argument and affirming a wire fraud conviction where a business school's dean made misrepresentations to fraudulently inflate the school's rankings and thereby induce students to enroll and pay tuition, and where the defendant "'often' said that a Fox degree was like a 'stock' that was 'appreciating in value' as Fox's rankings rose."); United States v. Milton, No. 21-CR-478-ER, 2023 WL 5609098, at *14 (S.D.N.Y. Aug. 30, 2023) (denying a motion for judgment of acquittal on a wire fraud count, finding that "an object of Milton's scheme was to falsely inflate [the company]'s stock price and then sell his stock in [the company] to deprive investors of their money and obtain the profits for himself."); United States v. Jesenik, No. 3:20-cr-228-SI, 2023 WL 3455638, at *2 (D. Or. May 15, 2023) (denying a mistrial motion during jury deliberations on wire fraud charges,

noting "Ciminelli did not involve a victim parting with money based on material misrepresentations or half-truths made with an intent to defraud, which is a classic and well-recognized scheme to deprive a person of a traditional property interest, namely money."). Several courts have also interpreted Ciminelli narrowly. See, e.g., United States v. Tuchinsky, 703 F. Supp. 3d 1337, 1343 & n.53 (D. Utah 2023) (explaining court's "interpretation of the narrow reach of Ciminelli is consistent with other courts who have addressed this question," and collecting cases).

b. *Even if Ciminelli Applies to Count Two, the Indictment Alleges Fraud Targeting at Traditional Property Interests of Victim Investors*

Contrary to defendant's assertion, the Supreme Court's decision in Ciminelli, has no bearing on this case because the Indictment does not allege a "right-to-control" theory of fraud. In Ciminelli, the Supreme Court addressed and rejected the Second Circuit's formulation of the so-called "right-to-control theory" of money-or-property wire fraud, according to which "a defendant is guilty of wire fraud if he schemes to deprive the victim of 'potentially valuable economic information' 'necessary to make discretionary economic decisions.'" Ciminelli, 598 U.S. at 308 (quoting United States v. Percoco, 13 F.4th 158, 170 (2d Cir. 2021)).

The difference between the theories of liability in Ciminelli and in the Indictment makes clear why Ciminelli is not implicated in this case. The government in Ciminelli did not pursue a theory that the defendant had schemed to obtain a victim's traditional money or property interests; instead, it charged a scheme to "defraud [the victim] of *its right to control its assets*, and thereby exposed [the

victim] to risk of economic harm." Unlike in Ciminelli, the government is not pursuing a "right to control" theory in this prosecution, which is demonstrated by the fact that "right to control" is not found anywhere in the indictment.

Although not necessary under Rule 7's pleading requirements, the Indictment's "money and property" theory of fraud is supported by allegations of how defendant's scheme to defraud was aimed at increasing Airborne's stock price at the expense of victim-investors who bought and held the stock at inflated prices. Specifically, the Indictment alleges that:

- Defendant Kabilafaks willfully and knowingly orchestrated an advertising campaign for the purpose of inflating Airborne's stock price. (Dkt. 1 at ¶17.tt.)[3]
- Defendant Kabilafkas carried out a "pump-and-dump" scheme by liquidating his Airborne stock at inflated prices for his own personal gain and to the detriment of investors. (Id. at ¶¶1, 17.qq.)
- Defendants Kabilafkas and Daniels spent millions of dollars on an extensive promotional media campaign to generate interest in Airborne stock through mass-marketing emails from stock promoters, television and print advertisements, press releases, and an electronic billboard in New York City's Times Square. (Id. at ¶17.jj-kk.)

[3] To maintain and increase the share price, investors must either buy or hold their stock, meaning they will be parting with their money or property. See, e.g., United States v. Schessel, 2:22-cr-00374-ES, at 3 (D.N.J. Apr. 23, 2024) (ECF No. 228) ("A scheme to increase the stock price necessarily involves obtaining money from investors by inducing them to buy or hold [the] stock.").

- Defendant Kabilafkas paid stock promoter companies to send mass-marketing promotional emails touting Airborne to prospective investors with statements that included "ABWN just hit a new 52-week high...this stock is on FIRE!" and "My newest pick could deliver KING SIZED gains so add it to your watch lists right away!" (Id. at ¶17.ll.)
- Defendants Kabilafkas and Daniels arranged for Airborne to advertise on cable television news networks to promote the investing public's interest in buying Airborne stock. (Id. at ¶17.rr.)
- Defendants Kabilafkas and Daniels purchased television commercial airtime for the purpose of promoting demand to buy Airborne stock. (Id. at ¶17.ss.)

**D. Criminal Forfeiture is a Mandatory Component of a Criminal Sentence, and Criminal Forfeiture is Not Constrained by Statutes of Limitation**

Count One of the Indictment charges conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and Count Two charges securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff(a), and 17 C.F.R. § 240.10b-5. Both Counts One and Two are subject to a statute of limitations of 6 years pursuant to 18 U.S.C. § 3301, and are properly before the Court. The Indictment also provides notice of a Forfeiture Allegation under 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).

Section 981, when used to support criminal forfeiture pursuant to 28 U.S.C § 2461(c), is not subject to the general 5-year statute of limitations provision found in 28 U.S.C. § 2462. In fact,

"forfeiture operates as punishment for criminal conduct, not as a separate substantive offense...." Libretti v. United States, 516 U.S. 29 (1995); see also United States v. Christensen, 828 F.3d 763, 822 (9th Cir. 2015) ("forfeiture is an aspect of the sentence, not an element of the underlying crime"); United States v. Harris, 2018 WL 6184878, at *7-8 (D. Haw. Nov. 27, 2018), aff'd, 842 F. App'x 28 (9th Cir. 2020) ("There is no particular statute of limitations for forfeiture and a criminal defendant may not benefit and keep the proceeds of part of the scheme to defraud because some transactions occurred outside the substantive crime's statute of limitations."). See also United States v. Reed, 908 F.3d 102, 126 (5th Cir. 2018) (imposing forfeiture under 18 U.S.C. § 981 and 28 U.S.C. § 2461(c) for a 20-year mail fraud scheme, and imposing forfeiture on all proceeds from the defendant's continuous criminal scheme--including proceeds from acts in furtherance of the scheme that fell outside the relevant statute of limitations period for mail fraud).

Defendant Kabilafkas incorrectly construes the Indictment's Forfeiture Allegation providing notice of forfeiture upon conviction of Count One or Count Two as "civil forfeiture" because the heading of 18 U.S.C. § 981 is titled as such. Def.'s Memo., Dkt. 81-1 at pp. 22-23. However, "headings and titles are not meant to take the place of the detailed provisions of the statutory text." Brthd. of R.R. Trainmen v. Baltimore & O. R. Co., 331 U.S. 519, 528 (1947). Defendant Kabilafkas also incorrectly asserts that the general statute of limitation for civil proceedings, 28 U.S.C. § 2462, controls the forfeiture allegations in the Indictment. Defendant relies on Gabelli v. SEC, 568 U.S. 442, 448-54 (2013) and Kokesh v. SEC, 581 U.S. 455, 457, 461 (2017), neither of which address criminal

forfeiture or the statutes cited in the Indictment's Forfeiture Allegation. Dkt. 81-1 at p. 23.

Defendant makes the same error as the defendant Reed, 908 F.3d 125-26. In Reed, the Fifth Circuit pointed out that the defendant's reliance on Kokesh was mistaken. Kokesh concerned the civil forfeiture statute 28 U.S.C. § 2462 and interpreted the language of that statute, which explicitly provides for a five-year limitations period on "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture." By its terms, § 2462 governs civil forfeitures. In contrast, here, forfeiture was imposed under 18 U.S.C. § 981 and 28 U.S.C. § 2461(c). Section 2461(c) allows for criminal forfeiture when civil or criminal forfeiture is authorized for an offense and the defendant is convicted. Because no specific statutory provision authorizes criminal forfeiture on Count One or Count Two, the Indictment seeks criminal forfeiture under § 2461(c) based on the civil forfeiture authorized under § 981. Defendant Kabilafkas identifies no case where a court has applied § 2462 or Kokesh to forfeiture under the provisions at issue in this case.

The simple reality is that criminal forfeiture has no independent statute of limitations. It is not a crime for which a defendant can be charged, but rather is a part of the defendant's sentence for a crime for which he is properly convicted. Libretti, 516 U.S. at 39 ("Our precedents have likewise characterized criminal forfeiture as an aspect of punishment imposed following conviction of a substantive criminal offense."); United States v. Ferrario-Pozzi, 368 F.3d 5, 8 (1st Cir. 2004) (criminal forfeiture "is a part of the sentence rather than the substantive offense"); United States v. Martin, 662 F.3d 301, 306 (4th Cir. 2011) ("Criminal forfeiture is

part of a defendant's sentence."); cert. denied, 566 U.S. 955 (2012) & cert. denied sub nom. Goodwin v. United States, 568 U.S. 852 (2012).

Furthermore, forfeiture is mandatory when the defendant is convicted of a crime which supports forfeiture. United States v. Ng Chong Hwa, 2023 WL 4194002, *2 (E.D.N.Y. Mar. 24, 2023) ("Because forfeiture is mandatory under the relevant criminal forfeiture statutes, 18 U.S.C. § 981(a)(1)(C) and 982(a)(1), and 28 U.S.C. § 2461(c)...the Court is statutorily required to order forfeiture in the full amount sought by the government"); United States v. Blackman, 746 F.3d 137, 143 (4th Cir. 2014) (the plain text of § 2461(c), which provides that the district court "shall order" forfeiture in the amount of the criminal proceeds, indicates that forfeiture is not a discretionary element of sentencing because criminal forfeiture was mandatory).

Obviously, because forfeiture is a mandatory part of the defendant's sentence, any crime of which the defendant can be lawfully convicted under its own statute of limitations supports the full punishment allowed for that crime, including the mandatory forfeiture.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion.