UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cr-00270-MRA-1 | Date | April 23, 2025 |
| Title | United States v. Kalistratos Kabilafkas | | |

| | | |
|---|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE | |
| Gabriela Garcia | Not Reported | None Present |
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Custody | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Kalistratos Kabilafkas | Not | | X | Matthew Ford, Noah Genel, Arthur Kuturoff, Christine Isaacs | Not | | X |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING DEFENDANT KALISTRATOS KABILAFKAS' MOTION TO DISMISS COUNT TWO AND FORFEITURE ALLEGATION ONE OF THE INDICTMENT [ECF 81]**

Before the Court is Defendant Kalistratos Kabilafkas' Motion to Dismiss Count Two and Forfeiture Allegation One of the Indictment (the "Motion"). ECF 81. The Court has read and considered the moving, opposing, and reply papers and held a hearing on the Motion. ECF 97. For the foregoing reasons, the Court **DENIES** the Motion.

## I. BACKGROUND

On April 25, 2024, a grand jury returned an Indictment, charging Defendant Kalistratos Kabilafkas ("Defendant" or "Kabilafkas") and another defendant with one count of conspiracy, in violation of 18 U.S.C. § 371, 2(b) ("Count One"), and one count of securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff(a), 18 U.S.C. § 2, and 17 C.F.R. § 240.10b-5 ("Count Two"). ECF 1. The Indictment generally alleges that from in or around May 2014 to in or around November 2018, Defendant, co-Defendant Jack Edward Daniels ("co-Defendant" or "Daniels"), and others conspired to engage and engaged in a fraudulent "pump-and-dump" scheme by amassing tradeable shares of Airborne Wireless Network ("Airborne"), using investors' funds to pay for a multi-million dollar stock promotion advertising campaign, and then selling their shares at inflated prices for their own personal gain and to the detriment of investors. *Id.* ¶ 1.

Count Two of the Indictment alleges that that from in or around May 2014 and continuing through at least in or around November 2018, Kabilafkas and Daniels engaged in a scheme to defraud investors. *Id.* ¶ 20. Paragraph 21 alleges that the purpose of the scheme was for

Kabilafkas and Daniels to "unjustly enrich" themselves by:

> (i) concealing from Apcentive investors plans to use the Wireless Patent as a device to promote a pump and dump scheme, (ii) using Apcentive investors' funds to secretly acquire all of the Unrestricted Shares of Airborne to carry out such a scheme, (iii) concealing the true ownership of the Unrestricted Shares of Airborne stock, and (iv) selling the Unrestricted Shares on the [Over the Counter] stock market during a multi-million-dollar advertising campaign designed to inflate Airborne's stock price.

*Id.* ¶ 21.

Paragraph 20 of the Indictment alleges the manner and means of the scheme to defraud by realleging paragraph 17. *Id.* ¶ 22. Under the header "Manner and Means of the Conspiracy," paragraph 17 covers a 15-page portion of the Indictment, divided into 11 subparts and 67 subparagraphs. *Id.* at 5-21. In relevant part, in or around May 2014, Kabilafkas allegedly acquired a controlling number of shares of stock in Apcentive, a privately held corporation, *id.* ¶ 17(a), and in or around April 2015, caused Apcentive to acquire a patent (the "Wireless Patent") for a technology that would, in concept, deliver highspeed in-flight internet access on commercial aircraft, *id.* In or around May 2015, Kabilafkas and an unindicted co-conspirator conspired to secretly acquire all of the unregistered shares and restricted shares of Airborne stock. *Id.* ¶ 17(d). Kabilafkas purportedly gained complete control of Airborne stock on or about October 20, 2015. *Id.* ¶ 17(s). In or about August 2015, just prior to the acquisition, Kabilafkas purportedly recruited Daniels to act as Airborne's new president and sole director, and together with Daniels, began directing and controlling Airborne despite having no formal role in the company. *Id.* ¶ 17(t), (u). Kabilafkas and Daniels allegedly filed false and misleading reports about the sale of Airborne with the Securities and Exchange Commission ("SEC"). *Id.* ¶ 17(w)-(cc). Between in or around August 2016 and in or around July 2018, Kabilafkas, Daniels, and others allegedly conspired to spend millions of dollars in investor funds on an extensive media campaign to promote Airborne's stock to drive up Airborne's stock price. *Id.* ¶ 17(jj)-(ccc). Kabilafkas purportedly capitalized on the inflated stock price by selling substantial volumes of his secretly acquired unrestricted shares of Airborne stock. *Id.* ¶ 17(ddd), (eee).

Count Two of the Indictment alleges that the execution of the fraudulent scheme occurred on or about April 27, 2018, when Kabilafkas and Daniels "sold and caused to be sold approximately 21,100 shares of Airborne stock for approximately $21,736 . . ." (the "April 2018 Sale"). *Id.* ¶ 23.

The Indictment contains a forfeiture allegation ("Forfeiture Allegation One"), providing notice that the government intends to seek forfeiture of six real properties "in the event of conviction" and "as part of any sentence," pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *Id.* ¶¶ 24-26. The forfeiture allegation states that any property "constituting, or derived from, any proceeds traceable to the offenses," including the six listed properties, are subject to forfeiture. *Id.* ¶ 25. On May 3, 2024, the government filed a Bill of Particulars for Forfeiture of Property, providing notice of two additional real properties subject to forfeiture. ECF 28.

Defendant filed the instant Motion on October 15, 2024, arguing that (1) any allegations relating to Count Two that pre-date the April 2018 Sale are time-barred, (2) the government has failed to allege a scheme to defraud in connection with the April 2018 Sale, and (3) Forfeiture Allegation One must be dismissed as time-barred. ECF 81. The government filed its Opposition on November 14, 2024. ECF 91. Defendant filed a Reply on November 21, 2024. ECF 93. The Court held a hearing on December 5, 2024. ECF 97. The trial in this case is set for November 4, 2025. ECF 98.

## II. LEGAL STANDARD

The Federal Rules of Criminal Procedure provide that a defendant may move to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment or information must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). An indictment will survive a motion to dismiss where it states the elements of the criminal offense in sufficient detail "(1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge." *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (quoting *United States v. Bernhardt*, 840 F.2d 1441, 1445 (9th Cir. 1988), *cert. denied*, 488 U.S. 954 (1988)); *see also United States v. ORS, Inc.*, 997 F.2d 628, 629 (9th Cir. 1993).

"An indictment tracking the language of the statute is usually adequate because statutes usually denounce all the elements of the crime." *United States v. Morrison*, 536 F.2d 286, 288 (9th Cir. 1976). That is, an "indictment that sets forth the charged offense in the words of the statute itself is generally sufficient." *United States v. Ely*, 142 F.3d 1113, 1120 (9th Cir. 1997) (quoting *United States v. Musacchio*, 968 F.2d 782, 787 (9th Cir. 1991)). Further, "[a] motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (internal quotation marks omitted). "[T]he

government [is] not required to allege its theory of the case or list supporting evidence to prove the crime alleged." *Musacchio*, 968 F.2d at 787 (citing *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982), *cert. denied*, 460 U.S. 1086 (1983)).

## III. DISCUSSION

### A. Count Two: Statute of Limitations

Count Two alleges securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff(a), and 17 C.F.R. § 240.10b-5. Section 10(b) of the Securities and Exchange Act (the "SEA") provides it is "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rule and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Among other SEC rules, Rule 10b-5 provides that "it shall be unlawful for any person . . . [t]o employ any device, scheme, or artifice to defraud . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. A willful violation of Rule 10b-5 may be criminally prosecuted. 15 U.S.C. § 78ff(a).

Defendant argues that Count Two against Kabilafkas is "almost entirely time-barred." ECF 81-1 at 19. Specifically, Defendant does not dispute that the April 2018 Sale itself falls within the statute of limitations, but maintains that, by incorporating by reference significant portions of the conspiracy charge, the government "risks resurrecting time-barred securities violations in the guise of a conspiracy case" and "compromise[s] Kabilafkas's right to a fair trial[.]" ECF 81-1 at 19-20. The government responds that it is common and legally appropriate for an indictment to provide "context for a fraudulent scheme outside the limitations period" provided the charged sale is within the limitations period. ECF 91 at 16-17.

When considering a motion to dismiss a criminal offense as untimely prosecuted, "the trial court [is] limited to the face of the indictment and [is] obliged to accept the facts therein alleged as true." *Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1954). "The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Toussie v. United States*, 397 U.S. 112, 114 (1970). "It is established law that the statute of limitations begins to run when an offense is completed." *Carroll v. United States*, 326 F.2d 72, 85-86 (9th Cir. 1963) (citing *Pendergast v. United States*, 317 U.S. 412 (1943)). Typically, "[a] crime is complete "as soon as every element in the crime occurs." *Musacchio*, 968 F.2d at 790. That is, "[t]he offense does not 'continue' over time." *United States v. McGoff*, 831 F.2d 1071,

1078 (D.C. Cir. 1987). A securities fraud violation is complete upon the purchase or sale of securities at issue. *Carroll*, 326 F.2d at 86 (defining a sale as complete at the time of offer, acceptance, and payment); *see United States v. United Medical & Surgical Supply Corp.*, 989 F.2d 1390, 1398 (4th Cir. 1993) (holding that "securities fraud is not complete, and the statute of limitations does not begin to run, until the sale of the security . . .").

The statute of limitations for criminal securities violations is six years. 18 U.S.C. § 3301. Count Two of the Indictment alleges that the allegedly fraudulent scheme was carried out as described in paragraph 17 of the Indictment, which in turn refers primarily to acts between May 2014 and November 2018. ECF 1 ¶¶ 17, 22. But, as paragraph 23 of the Indictment makes clear, the sale at issue in Count Two occurred on or about April 27, 2018. *Id.* ¶ 23. Defendant acknowledges that a securities violation is complete only upon the sale of securities at issue. ECF 81-1 at 18 (citing *Carroll*, 326 F.2d at 86). The Indictment was returned on April 25, 2024, within six years of the operative sale of securities. ECF 1. In short, based on the face of the Indictment, the Court finds that "[t]he statute of limitations d[oes] not bar the bringing of [Count Two]. [And] [t]he function of the statute of limitations ends with this determination." *Musacchio*, 968 F.2d at 790.

Defendant insists that any acts prior to April 25, 2018, cannot serve as the basis of prosecution for Count Two because a securities violation is not a "continuing offense." ECF 81-1 at 18-20. In so arguing, Defendant misapplies the continuing offense doctrine. It is true that "conduct *constituting a completed offense* which falls outside the applicable limitations period may not be prosecuted unless the crime is determined to be a continuing offense." *United States v. W.R. Grace*, 429 F. Supp. 2d 1207, 1240 (D. Mont. 2006) (emphasis added). In contrast to an ordinary crime where "[t]he crime is complete when the act is complete," *McGoff*, 831 F.2d at 1078, a "continuing offense" is an "unlawful course of conduct that does perdure. . . . The classic example of a continuing offense is conspiracy," *id.* The continuing offense doctrine has "no applicability to a situation . . . where the charged criminal conduct itself extends over a period of time. The doctrine comes into play where it is contended that the actual conduct of the defendant ended but the crime continued past that time." *United States v. Morales*, 11 F.3d 915, 918 (9th Cir. 1993).

Count Two of the Indictment charges Defendant with only the April 2018 Sale, not any completed securities transactions prior to April 2018. As the government explains, its theory is that the April 2018 Sale is part of the "dump" in the purported pump-and-dump scheme. ECF 91 at 14. Although certain alleged conduct forming the "pump" of the scheme or other "dumps" may have occurred outside the limitations period, such conduct does not constitute the completed offense charged in Count Two. Because all of the elements of the alleged offense were not

complete until the sale of securities on April 27, 2018, Count Two is not time-barred.

The cases relied on by Defendant are inapposite. In *United States v. Harris*, the defendant argued that the statute of limitations had run on the securities fraud count because the offense was complete at the time of sale, which fell outside the limitations period, *not* at the time of delivery within the limitations period. 919 F. Supp. 2d 702, 704 (E.D. Va. 2013). The district court agreed, holding that a sale is "not dependent on the actual delivery of the security instrument." *Id.* at 707. The court then rejected the government's alternative argument that even if a sale is completed prior to delivery, securities fraud is a continuing offense. *Id.* at 707-11. The Court does not disagree with the outcome in *Harris*, but unlike *Harris*, the sale in this case occurred *within* the limitations period. Similarly, in *United States v. Motz*, the district court found that although securities fraud schemes are frequently carried out over a period of time, it is not a continuing offense. 652 F. Supp. 2d. 284, 294. As such, the court held that the government may prosecute the defendant only for allegedly fraudulent trades that occurred within the statute of limitations. *Id.* The Court does not reach a different conclusion here. Count Two of the Indictment, on its face, only charges Defendant for the executed April 2018 Sale, which was completed within the limitations period. Lastly, in *United States v. Rivlin*, the district court evaluated whether embezzlement in violation of 18 U.S.C. § 664 is a continuing offense and concluded that "each time that Rivlin received and endorsed a check from the Fund on behalf of his deceased father, the necessary elements of the offense were satisfied and the statute of limitations began to run with respect to that violation." No. 07 CR. 524 (SHS), 2007 WL 4276712, at *3 (S.D.N.Y. Dec. 5, 2007). *Rivlin*'s holding regarding embezzlement has no relevant application here in the context of alleged securities fraud.

Finally, the Court agrees with the government that in seeking dismissal of Count Two because certain conduct forming part of the scheme falls beyond the statute of limitations, Defendant effectively moves to exclude evidence of any acts occurring prior to the April 2018 Sale. ECF 91 at 18. Defendant replies that leaving such arguments to a motion in limine "would effectively nullify the statute of limitations in cases like this . . . and should be rejected." ECF 93 at 16. But "[t]he statute of limitations does not bar the introduction of evidence of acts that occurred outside the limitations period." *Musacchio*, 968 F.2d at 790. To the extent Defendant seeks to exclude such evidence, he may do so at the appropriate time through a motion in limine, not a motion to dismiss.

Accordingly, the Court finds that Count Two of the Indictment is not time-barred, in whole or in part.

### B. Count Two: Failure to State an Offense

Defendant argues that the government must and has not alleged any misstatements or omissions that go to the nature of the bargain or that are material and made in connection with the April 2018 Sale. ECF 81-1 at 22, 27-28. Further, Defendant contends that the government must allege and has not alleged that Defendant intended to deceive a victim concerning the April 2018 Sale or deprive them of "money or property." ECF 81-1 at 21-28. The Court agrees with the government that Defendant misapplies the law and ignores allegations in the Indictment. *See* ECF 91 at 19-28.

#### *1. Nature of the Bargain*

Defendant first argues that the government must allege and has not alleged that Defendant made any misstatement or omission that "go[es] to the nature of the bargain." ECF 81-1 at 22 (quoting *United States v. Milheiser*, 98 F.4th 935, 944 (9th Cir. 2024)). In *Milheiser*, the Ninth Circuit vacated the defendants' mail fraud convictions based on their tactics in selling printer toner: a sales representative would call a business, falsely imply that the sales company was the business's regular supplier of toner, and falsely state that the price of toner had increased and that the customer could lock in the old price by purchasing more toner that day, but where "all of the businesses received the toner they ordered at the agreed price." 98 F.4th at 938. The court held that the government's theory of fraud was overbroad because "it did not require the jury to find that Defendants deceived customers about the nature of the bargain." *Id.* Under *Milheiser*, "[a] misrepresentation will go to the nature of the bargain if it goes to price or quality, or otherwise to essential aspects of the transaction." *Id.* at 944.

Defendant ignores that *Milheiser* concerns the federal mail fraud statute under Title 18 of the United States Code ("Title 18"), not securities fraud under Title 15 of the United States Code ("Title 15"). This distinction is significant. The mail fraud statute prohibits "devis[ing] or intending to devise a scheme or artifice to defraud, *or for obtaining money or property by means of false or fraudulent pretenses*, *representations, or promises*" when a person uses the mail in connection with that scheme. 18 U.S.C. § 1341 (emphasis added). *Milheiser* explained that "[t]he Supreme Court has interpreted this language to 'prohibit[] only deceptive schemes to deprive the victim of money or property.'" 98 F.4th at 942 (quoting *Kelly v. United States*, 590 U.S. 391 (2020)). Accordingly, to prove mail fraud, the government must show "not only that [] fraud defendants engaged in deception, but also that money or property was an object of their fraud." *Id.* (quoting *Ciminelli v. United States*, 598 U.S. 306, 315 (2023)). Consistent with these precedents, the Ninth Circuit in *Milheiser* agreed with its sister circuits that under the mail fraud statute, "not just any lie that secures a sale constitutes fraud, and that the lie must instead go to the

nature of the bargain." *Id.* at 942-44.

The "money or property" language in the mail fraud statute was essential to the court's holding in *Milheiser*, as well as the Supreme Court's decisions in *Kelly* and *Ciminelli*. *See id.* at 942-944 (discussing the "money and property" language in its reasoning); *Kelly*, 590 U.S. at 398; *Ciminelli*, 598 U.S. at 312 ("[W]e have consistently understood the 'money or property' requirement to limit the 'scheme or artifice to defraud' element because the 'common understanding' of the words 'to defraud' when the statute was enacted referred 'to wronging one in his property rights.'" (quoting *Cleveland v. United States*, 531 U.S. 12, 19 (2000)). Yet the same "money or property" language is wholly absent from section 10(b) of the SEA and Rule 10b-5. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Given this appreciable textual distinction, the Court finds that the holding in *Milheiser* does not apply to securities fraud charges under Title 15. Further, even if *Milheiser* applied, Defendant overlooks detailed allegations in the Indictment indicating that the alleged misrepresentations and omissions here went directly to the "nature of the bargain," including those related to the means and manner of the scheme set forth at paragraph 17 of the Indictment. *See generally* ECF 1 ¶ 17.

### *2. Materiality and In Connection With*

Defendant then argues that "[a]t no point in the 26 paragraphs of the Indictment does the Government identify any misstatement or omission in connection with the April 2018 Sale." ECF 81-1 at 22. Relatedly, he contends that his alleged misstatements and omissions are not material to the April 2018 Sale. *Id.* at 27-28. For a scheme to defraud to be "in connection with the purchase or sale of any security," it must at least "coincide" with the relevant securities transaction. *Sec. & Exch. Comm'n v. Zandford*, 535 U.S. 813, 822 (2002). "[A] statement is material if there is a substantial likelihood that a reasonable investor would consider it important in making a decision." *United States v. Tarallo*, 380 F.3d 1174, 1182 (9th Cir. 2004). Taken together, "[a] fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'" *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014).

Here, the Indictment alleges that Defendant concealed his ownership and control of unrestricted shares of Airborne stock from stock promoters and caused advertising promoting Airborne stock to include materially false and misleading statements. ECF 1 ¶ 17(mm). It also alleges that Defendant concealed from Airborne's investors that Airborne's majority shareholder, Kabilafkas, was directing investors' money to fund the mass advertising campaign for the purpose of boosting Airborne's stock price and enabled Defendant to sell his unrestricted shares for

substantial personal profit and to the detriment of Airborne's investors. *Id.* ¶ 17(qq). The Indictment alleges that Kabilafkas willfully and knowingly orchestrated this advertising campaign for the purpose of inflating Airborne's stock price. *Id.* ¶ 17(tt). Kabilafkas then purportedly sold or caused to be sold substantial volumes of unrestricted shares of Airborne, including the April 2018 Sale. *Id.* ¶¶ 18, 23. The Court finds that the government has sufficiently alleged that Defendant's misstatements and omissions are material to any of Defendant's purportedly "dumped" sales of Airborne shares in the course of the scheme, including the April 2018 Sale. *See Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1282 (9th Cir. 1982) (holding that "[a]ny significant relationship between" a director and the company in which he was recommending buying shares "was material to an evaluation of his and the other directors' positive recommendations, which presumably were material to an evaluation of the tender offer itself"); *Vernazza v. Sec. & Exch. Comm'n*, 327 F.3d 851, 858-59 (9th Cir. 2003) (having no trouble in finding that partners in an investment firm made materially false statements when they falsely disclaimed having any conflicts of interests in the securities they were recommending). As the government persuasively explains, Defendant's alleged "control and plans to dump his shares were material to any potential investor, [and] this information was not disclosed at any time through the scheme." ECF 91 at 9.

***3. Intent***

Defendant argues that the government must allege and has not alleged that Defendant intended to deprive the purported victims of money or property. ECF 81-1 at 25-27. Once more, Defendant almost exclusively relies on inapplicable Title 18 cases, and in doing so, misstates the law. *See generally id.* (citing, *inter alia*, *Cleveland*, 531 U.S. at 19 (mail fraud); *Shaw*, 580 U.S. 63, 72 (2016) (bank fraud); *Ciminelli*, 598 U.S. at 309-10 (mail fraud)). Courts are clear that securities fraud under Title 15 does not require the government to prove an intent to deprive the victim of money or property. *See, e.g.*, *United States v. Nordlicht*, No. 16-CR-00640 (BMC), 2023 WL 4490615, at *5 (E.D.N.Y. July 12, 2023) ("Wire fraud, unlike securities fraud, does require an intent to deprive the victim of money or property."); *United States v. McHatton*, No. 22-10329, 2024 WL 4972039, at *1 (9th Cir. Dec. 4, 2024) (holding that "money and property" requirement "does not control securities-fraud cases."). As the Ninth Circuit persuasively observed in its recent unpublished decision in *McHatton*, the language of section 10(b) "already ties the fraud to a specific type of property. It must be 'in connection with the purchase or sale of any security.'" *McHatton*, 2024 WL 4972039, at *1.

Nevertheless, in support of his argument that the "money or property" requirement applies, Defendant cites the district court's decision in *United States v. Constantinescu*, No. 4:22-CR-00612, 2024 WL 1221579 (S.D. Tex. Mar. 20, 2024). ECF 81-1 at 26-27. Yet there too, the

district court dismissed an indictment charging conspiracy to commit securities fraud and securities fraud under Title 18, where the relevant statutory provision contains the same "money or property" language found in other Title 18 provisions. *Constantinescu*, 2024 WL 1221579 at *1; *see* 18 U.S.C. § 1348(2). Defendant's cursory reference to the Second Circuit's decision in *Securities and Exchange Commission v. Govil*, 86 F.4th 89 (2d Cir. 2023), is also unavailing. *See* ECF 81-1 at 26. There, the court held that "[a]n investor who suffered no pecuniary harm as a result of the fraud is not a victim" for purposes of disgorgement in the civil context. *Govil*, 86 F.4th at 98. It says nothing at all about the scienter element of criminal securities fraud under Title 15. In applying Title 18 precedents to securities fraud under Title 15, Defendant impermissibly lumps "federal fraud statutes" together without heeding a significant difference in the statutory text. *See* ECF 81-1 at 26; ECF 93 at 22; *see also McHatton*, 2024 WL 4972039, at *1.

Because Defendant is wrong on the law, his application of Title 18 elements to Title 15 charges is fundamentally flawed. For instance, Defendant contends that Count Two of the Indictment "fails to allege any scheme intended to deprive the counterparty of the April 2018 Sale of anything, let alone any money or property." ECF 81-1 at 26. This argument is incorrect because, as explained above, the securities fraud mens rea under Title 15 does not require intent to deprive a victim of money or property and Count Two of the Indictment sufficiently alleges that the scheme to defraud was made "in connection with" the April 2018 Sale. 15 U.S.C. § 78j(b); *see McHatton*, 2024 WL 4972039, at *1 ("[T]he definition of securities fraud already requires a jury to find a defendant deprived a victim of property"). Nothing more is required. Defendant's emphasis that the Indictment alleges only that he was "unjustly enrich[ed]" by the sale and he sold stock "to the detriment" of investors is similarly misplaced. ECF 81-1 at 26 (quoting ECF 1 ¶¶ 1, 21).

While "a defendant may be convicted of committing mail fraud in violation of 18 U.S.C. § 1341 only if the government proves beyond a reasonable doubt that the defendant had the specific intent to defraud," *Tarallo*, 380 F.3d at 1181 (citation omitted), "a defendant may be convicted of committing securities fraud only if the government proves specific intent to defraud, mislead, *or* deceive," *id.* (citing *Brown*, 578 F.2d at 1284) (emphasis added); *see also Nordlicht*, 2023 WL 4490615, at *5 ("'Intent to harm' is not part of the scienter element of securities fraud. It is enough that defendants intended to 'deceive' or 'manipulate' [investors]."). Here, the Indictment sufficiently alleges that Defendant acted with an intent to mislead, manipulate, or deceive purchasers of Airborne securities, including the buyer involved in the April 2018 Sale. Kabilafkas purportedly concealed that he owned and controlled Airborne and planned to use millions in investor funds to "pump" the share price through a stock promotion campaign, and

then "dump" as many of his secretly held shares as possible, including on April 27, 2018. *See* ECF 1 ¶ 17.

***

For the foregoing reasons, the Court finds that the government has stated the elements of Count Two of the Indictment in sufficient detail to enable Defendant to prepare his defense, to ensure him that he is being prosecuted on the basis of facts presented to the grand jury, and to inform the Court of the alleged facts so that it can determine the sufficiency of the charges. *See Rosi*, 27 F.3d at 414. Having determined that the charges are sufficiently alleged, the Court **DENIES** Defendant's Motion to Dismiss Count Two of the Indictment.

### C. Forfeiture Allegation One

Defendant argues that Forfeiture Allegation One should be dismissed because the allegations pertain to real property purportedly owned by Kabilafkas for offenses committed outside the five-year statute of limitations under 28 U.S.C. § 2462. The government responds that criminal forfeiture pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c) is not subject to the general five-year statute of limitations provision found at 28 U.S.C. § 2462, and instead forfeiture is a mandatory component of a criminal sentence. ECF 91 at 28-31. The Court agrees that Defendant misinterprets the relevant statutory provisions.

28 U.S.C. § 2461 provides three "[m]odes of recovery" for forfeiture: civil, admiralty, and criminal. In relevant part, § 2461(c) states in full:

> If a person is charged in a criminal case with a violation of an Act of Congress *for which the civil or criminal forfeiture of property is authorized*, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case[.]

28 U.S.C. § 2461(c) (emphasis added). In other words, § 2461(c) authorizes criminal forfeiture "when civil or criminal forfeiture is authorized for an offense and the defendant is convicted." *United States v. Reed*, 908 F.3d 102, 126 (5th Cir. 2018). 18 U.S.C. § 981 ("Civil forfeiture") authorizes forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to," *inter alia*, securities fraud. 18 U.S.C. § 981(a)(1)(C). "Because no specific statutory provision authorize[s] criminal forfeiture on [securities] fraud counts, the

government [may] seek[] criminal forfeiture under § 2461(c) based on the civil forfeiture authorized under 18 U.S.C § 981. *Id.*

As an initial matter, Defendant misconstrues Forfeiture Allegation One as "civil forfeiture" because the heading of 18 U.S.C. § 981 is titled as such. *See* ECF 81-1 at 28. He ignores that that forfeiture is sought here "as part of any sentence" and "in the event of . . . conviction," ECF 1 ¶ 24, and that Forfeiture Allegation One was brought pursuant to not only § 981, but also § 2461(c), *id.* at 27. In fact, he makes no mention of § 2461(c) in his principal brief. *See* ECF 81-1 at 28-32. Because of this omission, Defendant incorrectly insists that the government seeks civil forfeiture. *See* ECF 81-1 at 28-29. However, when read in conjunction, § 2461(c) and § 981 clearly provide that the government may seek *criminal* forfeiture for a securities fraud violation for which Congress has authorized *civil* forfeiture. The government so alleges here.

In his Reply, Defendant maintains that all three modes of recovery under § 2461, including criminal forfeiture, are subject to the five-year statute of limitations found at 28 U.S.C. § 2462. ECF 93 at 25. Defendant is mistaken. Section 2462 ("Time for commencing proceedings") states that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture . . . shall not be entertained unless commenced within five years from the date when the claim first accrued[.]" The "most natural reading of the statute" is that "a claim based on fraud accrues—and the five-year clock begins to tick—when a defendant's allegedly fraudulent conduct occurs." *Gabelli v. Sec. & Exch. Comm'n*, 568 U.S. 442, 448, 454 (2013) (holding that the time for the SEC to commence a *civil* penalty action for fraud began to run when the fraud occurred, not when it was discovered); *see also Kokesh v. Sec. & Exch. Comm'n*, 568 U.S. 455, 457 (2017) (holding that the five-year statute of limitations applies to SEC claims for disgorgement).

"By its terms, § 2462 governs *civil* forfeitures," not criminal forfeitures. *Reed*, 908 F.3d at 126 (distinguishing between civil forfeitures and criminal forfeitures under 18 U.S.C. § 981 and 28 U.S.C. § 2461(c)). That is because criminal forfeiture is plainly not an "action, suit or proceeding," 28 U.S.C. § 2462, or "a claim [that] accrues," *Gabelli*, 568 U.S. at 448. Nor does it involve "commencing proceedings." 28 U.S.C. § 2462. Rather, criminal forfeiture is best characterized as "an aspect of punishment imposed following conviction of a substantive criminal offense." *Libretti v. United States*, 516 U.S. 29, 39 (1995); *see also United States v. Christensen*, 828 F.3d 763, 822 (9th Cir. 2015) ("Forfeiture is an aspect of the sentence, not an element of the underlying crime."). As such, "[t]here is no particular statute of limitations for forfeiture and a criminal defendant may not benefit and keep the proceeds of part of the scheme to defraud because some transactions occurred outside the substantive crime's statute of limitations." *United States v. Harris*, No. CR 17-00001 HG-01, 2018 WL 6184878 (D. Haw. Nov. 27, 2018), *aff'd,* 842 F. App'x 28 (9th Cir. 2020).

Defendant replies that § 2462 immediately follows § 2461 such that "all proceedings for forfeiture" pursuant to § 2461 must be subject to the five-year statute of limitations unless 'otherwise provided by an Act of Congress.'" ECF 93 at 25 ("One need only click the 'next' button on Westlaw . . . ."). This is unpersuasive. Defendant ignores the plain text of § 2461(c), which authorizes *criminal* forfeiture where *criminal or civil* forfeiture is authorized. Defendant suggests that *Harris* is distinguishable because that case concerned wire fraud for which criminal forfeiture is authorized under 18 U.S.C. § 982. ECF 81-1 at 32, n.15. But whether sought pursuant to 18 U.S.C. § 981 or § 982, *criminal* forfeiture under 28 U.S.C. § 2461(c) is not subject to the *civil* limitations period under § 2462.

The Court agrees with the government that Defendant makes the same mistake as the defendant in *Reed*. In that case, the defendant argued that the court should have only imposed forfeiture for a 20-year mail fraud scheme to offenses occurring within the five-year statute of limitations under § 2462. *Reed*, 908 F.3d at 125. The Fifth Circuit held that "the five-year limitations period . . . did not apply, and the district court was entitled to impose forfeiture on all proceeds from Reed's continuous criminal scheme—including those that fell outside the five-year limitations period for mail fraud." *Id.* Like the defendant in *Reed*, Defendant does not cite a *single* case applying § 2462 to limit forfeiture upon criminal conviction. *See id.* Defendant's reliance on *Gabelli* and *Kokesh* is likewise misplaced because neither case concerned criminal forfeitures. *See Gabelli*, 568 U.S. at 448; *Kokesh*, 568 U.S. at 457. Defendant does not identify any case applying *Gabelli* or *Kokesh* in the manner requested.

The Court finds that Forfeiture Allegation One is not time-barred. Accordingly, the Court **DENIES** Defendant's Motion to Dismiss Forfeiture Allegation One.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss Count Two and Forfeiture Allegation One of the Indictment.

**IT IS SO ORDERED.**

- : -

Initials of Deputy Clerk gga