Matthew A. Ford (*Admitted Pro Hac Vice*)
**FORD O'BRIEN LANDY LLP**
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Telephone: (212) 858-0040
mford@fordobrien.com

Noah D. Genel (*Admitted Pro Hac Vice*)
Arthur Kutoroff (*Admitted Pro Hac Vice*)
Christine Isaacs (*Admitted Pro Hac Vice*)
275 Madison Avenue
24th Floor
New York, New York 10016
Telephone: (212) 858-0040
ngenel@fordobrien.com
akutoroff@fordobrien.com
cisaacs@fordobrien.com

Attorneys for Defendant
KALISTRATOS KABILAFKAS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff<br><br>　　v.<br><br>KALISTRATOS　　KABILAFKAS　and<br>JACK EDWARD DANIELS,<br>　　　　　　　Defendants. | Case No.: 2:24-cr-00270-MRA<br><br>**DEFENDANT KALISTRATOS KABILAFKAS'S APPLICATION FOR AN ORDER ISSUING SUBPOENAS DUCES TECUM** |

Kalistratos Kabilafkas ("Kabilafkas"), through counsel, applies for an order issuing the subpoenas submitted with this application (the "Proposed Subpoenas"), with an early return date of November 21, 2025.  Kabilafkas requests that the responsive material be produced directly to his counsel, with the exception of a hard drive possessed by counsel for co-defendant Jack Edward Daniels (Sher Tremonte LLP, "Sher Tremonte") holding Airborne Wireless Network ("Airborne") company documents.  The hard drive would remain in Sher Tremonte's possession, but electronic copies of its contents would be provided to counsel for Kabilafkas.  Kabilafkas makes this application pursuant to Federal Rule of Criminal Procedure 17, and bases it on the incorporated memorandum of points and authorities and the accompanying Declaration of Matthew A. Ford, dated October 21, 2025 (the "Ford Declaration" or "Ford Decl."), and the accompanying subpoenas to Jack Edward Daniels and Sher Tremonte LLP (c/o Michael Tremonte and Katie Renzler), submitted herewith, the files and records in this case, and any further information as may be provided to the Court regarding the application.

Dated: October 21, 2025

Respectfully submitted,


/s/ Matthew A. Ford_____
Matthew A. Ford (*Admitted Pro Hac Vice*)
Ford O'Brien Landy LLP
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Telephone: (212) 858-0040
mford@fordobrien.com

Noah D. Genel *(Admitted Pro Hac Vice)*
Arthur Kutoroff *(Admitted Pro Hac Vice)*
Christine Isaacs (*Admitted Pro Hac Vice*)
275 Madison Avenue
24th Floor
New York, New York 10016
Telephone: (212) 858-0040
ngenel@fordobrien.com
akutoroff@fordobrien.com
cisaacs@fordobrien.com

*Attorneys for Defendant Kalistratos Kabilafkas*

Matthew A. Ford (*Admitted Pro Hac Vice*)
**FORD O'BRIEN LANDY LLP**
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Telephone: (212) 858-0040
mford@fordobrien.com

Noah D. Genel (*Admitted Pro Hac Vice*)
Arthur Kutoroff (*Admitted Pro Hac Vice*)
Christine Isaacs (*Admitted Pro Hac Vice*)
275 Madison Avenue
24th Floor
New York, New York 10016
Telephone: (212) 858-0040
ngenel@fordobrien.com
akutoroff@fordobrien.com
cisaacs@fordobrien.com

Attorneys for Defendant
KALISTRATOS KABILAFKAS

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff<br><br>          v.<br><br>KALISTRATOS    KABILAFKAS    and<br>JACK EDWARD DANIELS,<br><br>                    Defendants. | Case No.: 2:24-cr-00270-MRA<br><br>**DEFENDANT KALISTRATOS KABILAFKAS'S MEMORANDUM OF LAW IN SUPPORT OF HIS APPLICATION FOR AN ORDER ISSUING SUBPOENAS DUCES TECUM** |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

I.    BACKGROUND ........................................................................................ 4

    A. The Government Alleges that Kabilafkas was Airborne's Undisclosed Control Person........................................................................................................ 4

    B. The Documents Refuting the Government's Allegations are Primarily in the Possession of Daniels and his Counsel ........................................................ 5

    C. Daniels and the Government Frustrated Kabilafkas's Attempts to Obtain these Documents without Rule 17 Subpoenas .................................................... 7

    D. Kabilafkas Also Seeks Documents Showing that He Was Prejudiced by the Government's Failure to Disqualify Sher Tremonte ................................. 9

II.   ARGUMENT ........................................................................................ 12

CONCLUSION ................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Pennsylvania v. Ritchie,*
  480 U.S. 39 (1987) ...................................................................................12

*United States v. Eden,*
  659 F.2d 1376 (9th Cir. 1981) ...............................................................12

*United States v. Nixon,*
  418 U.S. 683 (1974) ...............................................................................12

*United States v. Sleugh,*
  896 F.3d 1007 (9th Cir. 2018) ...............................................................12

*United States v. Vega,*
  2023 WL 4983240 (C.D. Ca. May 6, 2023) ..........................................12

Rules

Federal Rule of Criminal Procedure 17 .........................................1, 3, 12, 16, 17

Kalistratos Kabilafkas ("Kabilafkas") respectfully submits this memorandum of law, in addition to the accompanying the Declaration of Matthew A. Ford, dated October 21, 2025 (the "Ford Declaration" or "Ford Decl.") and subpoenas (Ex. 1), in support of his application for an order issuing subpoenas *duces tecum* pursuant to Rule 17.

## PRELIMINARY STATEMENT

Kabilafkas files this application to obtain critical exculpatory material in the possession, custody, and control of co-defendant and government cooperator Jack Edward Daniels ("Daniels") and his counsel of record. As the Court is aware, the government alleges that Kabilafkas committed securities violations because start-up Airborne Wireless Network ("Airborne") (ticker ABWN) did not disclose that Kabilafkas was its "control person" in part through purchasing shares from ABWN shareholders in Thailand. But Daniels, not Kabilafkas, was the President and control person of Airborne who traveled to Thailand to arrange the transfer of shares to himself. Key exculpatory evidence is in Daniels's possession and consists of the records showing that Daniels, as President, exercised actual control over Airborne and traveled to Thailand to obtain the shares, which the government incorrectly claims Kabilafkas possessed. As Daniels's extensive travels to Thailand corroborate (as revealed in Custom and Borders Patrol records recently obtained following a *Brady* production by the government), Daniels, not Kabilafkas, negotiated the transaction with Thai shareholders and transfer of shares to himself. Photographic evidence such as the below photo obtained by Kabilafkas's counsel further corroborate

1

Daniels's travel to Thailand (and perhaps should have given the government pause before consenting to the return of his passport and unmonitored abroad).  Ex. Nos 2–3.



For months, counsel for Kabilafkas has endeavored to obtain exculpatory and other relevant evidence in the possession of Daniels and his counsel through communication with the government and Daniels's counsel.  But they have stonewalled Kabilafkas's requests: months after Kabilafkas requested these documents, Daniels's counsel provided a deficient production that consists of emails cherry-picked by Daniels himself who forwarded them to counsel.  Daniels's counsel failed to conduct a proper review of documents that would refute the central tenets of the government's case and disrobe Daniels's dishonest

2

statements made during his proffer sessions. And Kabilafkas's subsequent communications with both the government and counsel for Daniels only show that future attempts to obtain these critical documents outside of a Rule 17(c) subpoena would be futile.

Therefore, Kabilafkas files this application to obtain the following items:

**From Daniels:**

- All documents (including, without limitation, all communications)[1] related to Airborne;
- All communications with Kabilafkas;
- All documents (including, without limitation, photographs, airplane tickets and other travel records, and documents showing hotel reservations) regarding travel to/within/from Thailand (including, without limitation, documents related to Daniels's travels in Thailand);
- Any device that stores electronic data (including, without limitation, hard drives and/or flash drives) containing documents from Airborne, including, but not limited to documents that Airborne provided to its counsel Sher Tremonte LLP; and
- All documents showing any loan of funds that Daniels obtained to purchase or in connection with the purchase of shares of Airborne.

**From Daniels's counsel:**

- All documents related to Airborne;
- Any device that stores electronic data (including, with limitation, hard drives and/or flash drives) containing

---

[1] The reference to "communications" encompasses, without limitation, all emails from any domain, including Calwest, Daniels's personal, non-Airborne email address.

documents from Airborne that Airborne provided to Sher Tremonte LLP; and

- All communications with the government and documents reflecting these communications (including calendar entries), including but not limited to, communications related to the actual conflict between Sher Tremonte LLP's representation of Airborne (alleged by the SEC and government to be an alter ego of Kabilafkas) and Daniels.

*See* Ex. 1.

## I.    BACKGROUND

### A.    The Government Alleges that Kabilafkas was Airborne's Undisclosed Control Person

Because the parties have litigated this case at length before the Court, this application omits a detailed explanation of the government's allegations against Kabilafkas. But the essence of the indictment in this case (the "Indictment," filed under ECF No. 1, April 25, 2024) is that Kabilafkas was an undisclosed "control person" of Airborne.

Allegedly, Kabilafkas purchased pre-signed and pre-notarized, but otherwise blank, contracts for the purchase and sale of stock certificates of unrestricted shares in a predecessor company of Airborne, Ample-Tee, held by approximately 30 shareholders from Thailand. Indictment ¶¶ 17(m)-(s). Kabilafkas allegedly then "recruited" Daniels to serve as the president of Airborne. *Id.* ¶ 17(t). But despite having no formal role at the company, Kabilafkas allegedly "selected and exercised decision-making and control over Airborne's CEO and other executives, and directed defendant DANIELS on how to respond to inquiries from Airborne's public accounting firm." *Id.* ¶ 17(v). The Indictment

alleges that Airborne's SEC filings were false and misleading because they concealed, among other things, Kabilafkas's purported ownership of restricted Airborne stock. *Id.* ¶¶ 17(x)-(z), (mm). The Indictment also alleges that the SEC filings falsely claimed Daniels purchased shares in Airborne but allegedly Daniels "had not purchased any Airborne stock, nor were any of DANIELS' personal funds used to make such a purchase." *Id.* ¶ 17(x).

### B. The Documents Refuting the Government's Allegations are Primarily in the Possession of Daniels and his Counsel

Kabilafkas disputes the allegations in the Indictment, as well as their legal sufficiency. Daniels and his conflicted counsel Sher Tremonte LLP ("Sher Tremonte") (who represented Airborne, alleged by the government to be an alter ego of Kabilafkas) have documents detailing the involvement in Airborne of Daniels as well as Jeff Wolin and Andrew Wolin (also a client of Sher Tremonte), to whom Daniels delegated significant responsibilities.[2]

Daniels also possesses extensive records of his travel to Thailand. Kabilafkas did not accompany Daniels on these trips and, in fact, has never been to Thailand. Contrary to the government's allegations, Daniels, not Kabilafkas, arranged the transfer of shares from Thai shareholders, and those shares were transferred to Daniels, not Kabilafkas. The SEC had largely concealed Daniels's travels to Thailand, but the government, pursuant to a

---

[2] Further, Daniels possesses documents showing the loan or funds he used to purchase ABWN shares, including the 84.1 million restricted, non-transferrable shares the government mistakenly alleges belonged to Kabilafkas.

*Brady* request by the undersigned, has produced Customs and Border Patrol records, showing frequent travel by Daniels to Thailand immediately preceding the transfer of the shares in 2015, as well as during a secondary raise in 2017 when Daniels was actively engaged in negotiations in Thailand. Daniels's claim during an interview with the government that he repeatedly traveled to Thailand to visit a friend during the time of the share transfers is absurd on its face. Ex. 4 at 6.

In a typical investigation, the FBI itself obtains documents through warrants and other investigative methods before any defendant is indicted. But as the Court may recall from the November 27, 2024, motion to suppress and compel documents from the Securities and Exchange Commission (the "SEC") (ECF No. 94), the vast majority of the documents the DOJ is using in this case are from the SEC. In turn, the documents the SEC obtained are just a subset of documents in the possession of Airborne, that it received from Airborne via its president, Daniels (both represented by Sher Tremonte). When the SEC requested documents from Airborne, Airborne personnel placed the company's documents on a hard drive (the "Airborne Hard Drive") and ran search terms on those documents, producing to the SEC only the documents that hit on the search terms and excluding attorney-client privileged material, over which Sher Tremonte now claims Daniels is not asserting privilege on behalf of the company. Ex. 5. The Airborne Hard Drive, which may

contain tens of thousands of documents never produced to the SEC or DOJ, remains in the possession of Daniels and his counsel of record, Sher Tremonte LLP.[3]

Although Airborne collected the documents in the Airborne Hard Drive in connection with an SEC investigation, there is no one asserting privilege over these documents. Airborne is a defunct entity with no employees or representatives other than its president Daniels. Kabilafkas was a mere ABWN shareholder and Kabilafkas has never had authority to claim privilege on behalf of Airborne. In a letter dated October 9, 2025 (the "October 9 Letter"), Daniels disclaimed privilege over documents he produced (as further explained below) that are likely similar to those in the Airborne Hard Drive. Ex. 5. Nonetheless, to the knowledge of Kabilafkas and his counsel, the government has made no effort to collect the documents on the Airborne Hard Drive. Nor has it ever sought to preserve the contents of Daniels's smartphone or electronic devices or paper records. Kabilafkas therefore requests the Airborne Hard Drive from both Daniels and his counsel, along with any other materials or documents in their possession related to Airborne.

### C. Daniels and the Government Frustrated Kabilafkas's Attempts to Obtain these Documents without Rule 17 Subpoenas

On July 15, 2025, counsel for Kabilafkas emailed counsel for the government and requested, among other things, the government's assistance in obtaining certain documents since "we can avoid unnecessary motion practice if the government were to obtain these

---

[3] All Airborne documents were transferred to Sher Tremonte around May 16, 2021.

documents, but otherwise we intend to seek them through Rule 17(c) subpoenas."  Ex. 6 (letter from co-counsel for Kabilafkas, Arthur Kutoroff, to the government, July 15, 2025). One of the categories of documents Kabilafkas referenced in this email was: "All communications between Jack and Kabilafkas (including, without limitation, emails from Calwest domain); all of Jack's communications concerning Airborne; and Jack's communications regarding travelling to Thailand." *Id.*  Counsel for Kabilafkas added: "We believe the government's role in obtaining these documents is particularly valuable because Jack is cooperating with the government and his counsel has been unresponsive to us in the past." *Id.*  Counsel for Kabilafkas and the government met and conferred about this request on July 21, 2025, and revisited the issue during numerous subsequent meet-and-confers, including on October 3, 2025.

On October 9, 2025, counsel for Daniels produced documents to Kabilafkas.  Ex. 5.[4] The accompanying October 9 Letter stated that the production was "the result of a diligent search for materials and information responsive to your requests" for "(1) All communications between Mr. Daniels and Mr. Kabilafkas (including, without limitation, emails from the Calwest domain); (2) All of Mr. Daniels's communications concerning Airborne; and (3) Mr. Daniels's communications regarding traveling to Thailand." *Id.*

---

[4] Daniels's counsel initially made this production on October 3, 2025, but inadvertently produced what appeared to be privileged documents.  Ex. 7.  Counsel for Kabilafkas promptly alerted Daniels's counsel about these documents, and counsel for Daniels subsequently issued the October 9 production to replace the October 3 production.

In total, the production included 367 documents many of which appear to have been forwarded from Daniels to his counsel.  The production bore none of the hallmarks of a professional document production overseen by counsel.  Instead, it appears that this production was the result of Daniels cherry-picking documents to provide to Kabilafkas.  Daniels is withholding (or has spoliated) documents and communications contradicting the government's theory of the case, for example, documents corroborating Daniels's performance of his role as President of Airborne.  *See* Ex. Nos. 8-10.  For example, this email does not appear Daniels's production:

**From:** Jack Daniels <daniels@calwestpartners.com>
**Subject: Leaving now**
**Date:** February 15, 2018 at 11:41:53 AM PST

I thought the meeting went very well yesterday.
Anyhow I'm leaving now for Thailand to meet with some investors.
I have the unlimited calling plan on my phone .

Sent from my iPad

**D. Kabilafkas Also Seeks Documents Showing that He Was Prejudiced by the Government's Failure to Disqualify Sher Tremonte**

Kabilafkas is also seeking records of communications between Daniels's counsel and the government because these documents will corroborate the extent to which the government was aware of the actual conflict created by Sher Tremonte representing Airborne and Daniels (as well as Andrew Wolin), which counsel for Kabilafkas discussed with the government at length in a meet-and-confer telephone conference on October 3, 2025.  Sher Tremonte has divided loyalties in this case arising from this tripartite

representation of Airborne (alleged by the government to be an alter ego of Kabilafkas), Daniels, and Airborne's "Finance Manager," Andrew Wolin.

In the parallel SEC enforcement action, *SEC v. Airborne*, No. 21-cv-01772 (S.D.N.Y.) (the "SEC action"), Sher Tremonte entered appearances on behalf of Airborne on April 29, 2021 (SEC action, ECF No. 42) and Daniels on September 25, 2023. SEC action, ECF No. 242. And Sher Tremonte also represented Andrew Wolin in the SEC action. Ex. 11. On May 2, 2024, Sher Tremonte was substituted out of its representation of Airborne in the SEC enforcement action (*see* SEC action, ECF No. 268), and, on the same day, May 2, applied to appear on behalf of Daniels in this case. *See* ECF No. 14.

Notwithstanding Sher Tremonte's May 2, 2024, withdrawal—the representations of Airborne (alleged by the government to be an alter ego of Kabilafkas) and Daniels had already overlapped for approximately seven months—the firm had undertaken the tripartite representation of Airborne, Daniels, and Andrew Wolin, which constitutes an actual conflict. Sher Tremonte does not contest that it *currently* possesses Airborne's company documents or that it represented Airborne from at least 2021 until after the Indictment. It has refused to produce these documents (which exculpate Kabilafkas and have been in its sole possession) and has invoked a bogus claim of attorney-client privilege over many of these documents even though no one exists who can assert privilege on behalf of Airborne (other than Daniels). The improperly withheld "privileged" documents, we have reason to believe, include communications between Airborne counsel and Daniels and Jeff Wolin

10

and Andrew Wolin that would exonerate Kabilafkas of the core allegations in the Indictment. It is a miscarriage of justice that Daniels's conflicted counsel continues to improperly withhold these documents to protect his client Andrew Wolin as the expense of his former client Airborne (alleged to be an alter ego of Kabilafkas).

Further, between January and April 2024, Sher Tremonte consulted extensively with *both* Daniels and *Kabilafkas*, including for a period of time when Kabilafkas was yet unrepresented in the criminal investigation that lead to this Indictment. Representation of both Daniels and Airborne is a conflict because Daniels is taking the position that he was its straw President. Sher Tremonte's representation of Daniels as a cooperator against Kabilafkas is a conflict in light of Sher Tremonte's prior consultations with Kabilafkas. The government has been made aware of this conflict (as well as Daniels spoliation of evidence that exculpates Kabilafkas), but has made no effort to disqualify Sher Tremonte nor preserve this evidence.

Consequently, Kabilafkas requests documents evidencing Daniels's counsel's communications with the government, which can be used to impeach the government's investigation and prosecution of the Indictment and which will confirm the prejudice arising from these conflicts, for example, discussions of Daniels cooperating against Kabilafkas overlapping the period when Kabilafkas was consulting Sher Tremonte and while Sher Tremonte represented Airborne and Andrew Wolin.

## II. Argument

"A criminal defendant has a constitutional right to compulsory process in building a defense." *United States v. Sleugh*, 896 F.3d 1007, 1012 (9th Cir. 2018)) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)). The Sixth Amendment enshrines this right in the Constitution. Rule 17 provides defendants with a means to secure this right by securing materials in advance of trial. *See United States v. Nixon*, 418 U.S. 683, 700 (1974); *Sleugh*, 896 F.3d at 1012; *United States v. Vega*, 2023 WL 4983240, *2 (C.D. Ca. May 6, 2023). Courts issue such subpoenas when a defendant shows:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Vega*, 2023 WL 4983240, at *2 (quoting *Nixon*, 418 U.S. at 699-700). "These determinations are of course committed to the sound discretion of the trial court . . . ." *Id.* (quoting *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981); *Nixon*, 418 U.S. at 702). Each request fulfills satisfies these requirements.

**Daniels's documents concerning Airborne are relevant to establishing Daniels's role as President of Airborne and his actual ownership of ABWN shares.** A significant amount of Airborne-related documents in Daniels's possession have not been produced.

*See, e.g.*, Ex. Nos. 8-10.  These documents are material because they refute the Indictment's allegations that Daniels was a strawman and did not own ABWN shares.

Kabilafkas does not have access to Daniels's Airborne-related communications, and a trial without such evidence would be bereft of the record necessary for the jury to evaluate who controlled Airborne.  These documents are known to be held (or as having been held) in two places: (1) by Daniels himself, and (2) among Airborne company documents now held by Daniels's counsel, Sher Tremonte.

**Daniels's communications with Kabilafkas.**  The reasoning is similar here as for Daniels's communications concerning Airborne.  The communications between Daniels and Kabilafkas refute the allegation that Kabilafkas was controlling Airborne:  While Kabilafkas retains copies of many of these communications, Kabilafkas seeks production of original copies of these emails *from Daniels* to authenticate them for use at trial.

**Documents showing travel in Thailand.**  The Indictment places Thailand at the heart of the matter.  Daniels traveled to Thailand many times in his capacity as President of Airborne, booking his travel on using Airborne's company credit cards.  Ex. Nos. 12-13.  Daniels's business purpose for his repeated visits to Thailand was to negotiate the acquisition of Ample-Tee shares from approximately 30 Thai Shareholders, which he transferred to himself.  The Indictment wrongfully ascribes this to Kabilafkas, who has never been to Thailand.  The frequency and duration of Daniels's visits to Thailand corroborate that Daniels, not Kabilafkas, purchased shares from Thai shareholders.

13

Daniels should be ordered to produce all evidence related to his travels to Thailand, including, but not limited to, photographs (such as those attached as exhibits) and receipts.

**Documents concerning a loan for Airborne shares.**  These documents refute the allegations that Daniels never purchased Airborne shares using his "personal funds."  As these records show, he not only purchased these funds but took out a loan to do so.

**Airborne Hard Drive**.  These are the original records of Airborne and are likely the only source of the unvarnished truth of how Airborne was managed.  Daniels and his counsel must be ordered to produce all Airborne documents in their possession, including documents improperly withheld on the basis of a never asserted privilege.  To the extent Sher Tremonte possesses other Airborne documents, it should be ordered to produce those as well.

**Communications between Daniels's counsel, Sher Tremonte, and the government.**  These records will corroborate the extent of the government's knowledge of Sher Tremonte's tripartite representation of Daniels, Airborne (allegedly totally controlled by Kabilafkas), and Andrew Wolin. Sher Tremonte's representation of Jack Daniels as a cooperator against Kabilafkas already satisfies the standards for an unwaivable conflict as a matter of law, but the content of Sher Tremonte's communications with the government will establish the extent and impact of this conflict, including in relation to the preservation of exculpatory materials.

## **CONCLUSION**

For the reasons set forth above, the Court should grant Kabilafkas's Application For An Order Issuing Subpoenas Duces Tecum with an early return date (proposed to be November 21, 2025) and production directly to Kabilafkas's counsel. A proposed order granting the issuance of the Proposed Subpoenas and a form of the Proposed Subpoenas are enclosed for the Court's convenience.

Dated: October 21, 2025

Respectfully submitted,

*/s/ Matthew A. Ford*
Matthew A. Ford *(Admitted Pro Hac Vice)*
Ford O'Brien Landy LLP
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Telephone: (212) 858-0040
mford@fordobrien.com

Noah D. Genel *(Admitted Pro Hac Vice)*
Arthur Kutoroff *(Admitted Pro Hac Vice)*
Christine Isaacs (*Admitted Pro Hac Vice*)
275 Madison Avenue
24th Floor
New York, New York 10016
Telephone: (212) 858-0040
ngenel@fordobrien.com
akutoroff@fordobrien.com
cisaacs@fordobrien.com

*Attorneys for Defendant Kalistratos Kabilafkas*

## **CERTIFICATE OF CONFERENCE**

I certify that, on July 21, 2025, counsel for Kabilafkas met and conferred with the government, seeking production—from Daniels and Sher Tremonte—of "(1) All communications between Mr. Daniels and Mr. Kabilafkas (including, without limitation, emails from the Calwest domain); (2) All of Mr. Daniels's communications concerning Airborne; and (3) Mr. Daniels's communications regarding traveling to Thailand." The parties agreed that the government would forward this request to Sher Tremonte and the government did so. Counsel for Kabilafkas emphasized its interest in the outcome of this request—including the possibility of a subpoena under Federal Rule of Criminal Procedure 17(c)—in subsequent meet-and-confers with the government, including on October 3, 2025.

Later on October 3, Sher Tremonte produced documents in response, but inadvertently included documents that appeared to be privileged Daniels.[5] On October 6, 2025, counsel for Kabilafkas emailed the government regarding a potential Rule 17(c) subpoena to Mr. Daniels, and in response, on October 9, 2025, counsel for the government stated: "Regarding the October 3 production of materials from Sher Tremonte, based on the record before us we would oppose a Rule 17 subpoena to Jack Daniels for the materials that you previously requested. You have not provided us sufficient information to

---

[5] Counsel for Kabilafkas promptly alerted Daniels's counsel about these documents, and counsel for Daniels subsequently issued a replacement production on October 9.

conclude that responsive material was not produced to you, nor have you shown a good faith effort to obtain the alleged missing material prior to making an application to the Court for a Rule 17 subpoena."

## CERTIFICATE OF SERVICE

I hereby certify that the forgoing documents have been served to all opposing parties in this case via the Court's CM/ECF system.

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Defendant Kalistratos Kabilafkas, certifies that this brief contains less than 7,000, which complies with the word limit of L.R. 11-6.1.

Date: October 21, 2025

*/s/ Matthew A. Ford*_____
Matthew A. Ford *(Admitted Pro Hac Vice)*
Ford O'Brien Landy LLP
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Telephone: (212) 858-0040
mford@fordobrien.com

*Attorney for Defendant Kalistratos Kabilafkas*